806 So.2d 557 (2002)
LISA, S.A., a Panamanian corporation, Appellant,
v.
Juan Luis Bosch GUTIERREZ, et al., Appellees.
Nos. 3D01-1704, 3D01-894.
District Court of Appeal of Florida, Third District.
January 16, 2002.
Rehearing and/or Certification Denied February 20, 2002.
Greenberg Traurig, and Elliot H. Scherker, and Elliot B. Kula; and Rodriguez & Machado, and Albert J. Xiques, and Hilda Piloto; and Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Miami, and Sylvia H. Walbolt, and David F. Patterson, St. Petersburg, and Wendy Lumish, Miami, and Michael Winston, W. Palm Beach, and Gary L. Sasso, St. Petersburg; and Homer Bonner & Delgado; and William L. Richey, Miami, for appellant.
Astigarraga, Davis, Mullins, & Grossman, and Edward Mullins, and Annette C. Escobar, Miami, for appellees.
Before COPE, FLETCHER, and RAMIREZ, JJ.
RAMIREZ, J.
The plaintiff, Lisa, S.A., appeals an order quashing service of process on the individual and corporate defendants. We affirm the trial court's finding that service on the individual defendants was made during a settlement conference here in Miami, Florida, and that service on the corporations was not effectuated pursuant to Florida statutes.
*558 Lisa, S.A., is a one-third shareholder of a group of Guatemalan corporations known as the Avicola, which produces, sells, and distributes processed chicken to retail outlets. Lisa is one of three family groups who collectively own the Avicola.
From 1982 to 1991, meetings took place regularly in Toronto, Canada, where a representative of the Avicola would disseminate financial information. From 1991 to 1994, several meetings took place in Guatemala. No further shareholders' meetings have occurred since 1996. There were three meetings in Miami during the 1990's for the purpose of discussing a purchase of Lisa's interest in the Avicola. A tentative agreement was reached to sell this interest for $93.7 million, but the sale was not consummated because the parties were unable to agree on financing terms.
In 1998, Lisa noted certain discrepancies in the financial information provided by the Avicola. There was a meeting at Lisa's offices in Toronto in April, 1998. During the ensuing communications, one of the defendants, Dionisio Gutierrez Mayorga, suggested an informal meeting at his house in Key Biscayne, but the meeting never took place. Instead, on August 20, 1998, two executives of the Avicola went to Toronto.
Lisa filed a lawsuit in Miami on November 25, 1998, but neither served nor informed the defendants of the litigation. During one of several conversations, Dionisio suggested a meeting in Guatemala, which was later canceled. On January 29, 1999, Lisa called Dionisio to make another attempt to set up a meeting. Dionisio first proposed Guatemala, but Lisa declined because of the health of one of Lisa's principals. Dionisio then suggested Miami. The parties agreed to meet on February 16, 1999, at the Sonesta Hotel on Key Biscayne.
Lisa filed another complaint on February 11, 1999, and obtained ex parte orders freezing the defendants' assets and obtaining ex parte discovery from four Miami banking institutions. It retained process servers, who checked in to the Sonesta the day before the meeting, and set up a command post in one of the hotel rooms. They were instructed to serve process at the end of the meeting.
The meeting began, as agreed, with the Avicola providing financial information. Following the Avicola's several-hour presentation, Lisa played a pre-recorded CD-ROM, at the end of which Lisa announced that it had decided to sue the defendants. At that point, the process servers entered the room and served the defendants.
The trial court found that Citrexsa, S.A. v. Landsman, 528 So.2d 517 (Fla. 3d DCA 1988) mandated quashing the service of process on the individual defendants. Lisa attempts to distinguish Citrexsa on the basis that it (1) acted in good faith; (2) the meeting was not a settlement forum but a shareholders' meeting; and (3) Miami had been used before. We cannot fault the trial court's conclusions to the contrary. Lisa's actions in filing two suits prior to the meeting, preparing a CD-ROM presentation that ended with the announcement of litigation, and the elaborate preparations to serve the defendants belie any good faith. There was ample evidence to support the trial court's further finding that the defendants, all nonresidents, entered the jurisdiction solely to attend a meeting where, in good faith, they would attempt to provide the financial information which Lisa had been seeking and thereby avert litigation. We agree with the trial court that Citrexsa dictates the quashing of the service of process.
We also agree with the trial court that precedent dictates quashing service of process on the corporate defendants. The *559 corporate defendants were served in Panama by first using local notaries public who delivered the suit papers to the corporate defendant's resident agent in Panama. Later, these notaries public attempted to deliver process to officers of the corporate defendants. The returns of service show that in two cases, the notary served the receptionist at the resident agent's offices and in the other case service was effected on the resident agent's law clerk.
As stated in Washington Capital Corp. v. Milandco, Ltd., Inc., 665 So.2d 375 (Fla. 4th DCA 1996), section 48.081, Florida Statutes (1999), governs service of process on corporations, and the statute "must be strictly construed and strictly complied with." There service was quashed because it was effectuated on a secretary/receptionist of the foreign corporation. Service here on a receptionist or a law clerk is equally unavailing and does not strictly comply with the statute.
We therefore affirm the two orders quashing service of process on all defendants.